SENA J. CHERRY, et al., plaintiffs in error, *v.* THOMAS M. JONES, Ordinary, for use, etc., defendant in error.

(Atlanta, January Term, 1871.)

DOCUMENTARY EVIDENCE—CHARGE OF COURT.—An action was brought on a guardian's bond against the principal and securities, in the name of the Ordinary, for the use of the wards of the guardian, to recover damages for the alleged breach thereof by the guardian, and on the trial, the plaintiff offered in evidence the receipts of the guardian, acknowledged to have received from the executors of F. Cherry, deceased, the sum of $7,068 77, as the amount due by them to her as the guardian of her wards. The defendants offered to prove by one of the defendants that Sena J. Cherry, the guardian of her five minor children, received into her hands three negroes of the value of $3,000 00 one note on Whaley for $1,300 00 and one note on Reddick, the witness, for $1,350 00; that it was for said negroes and notes that the receipts of the guardian to the executors of Cherry were given; that no other property, except said negroes and notes, and some $700 00 worth of property which she bought at the sale, came into her hands; that witness paid his note in Confederate money, in 1863 or 1864; that the consideration of the note on Whaley was a negro slave, and that Whaley has been since the war insolvent; that the guardian purchased said negroes at the sale of the property of F. Cherry at the price of $3,000, that when she afterward became guardian of the minor children, she, as such guardian, receipted the executors for the estate of said minors, that she and the executors included the price of said negroes in said receipt, that she held said negroes, and treated them as the property of said wards and that said negroes were set free by the results of the war. The Court ruled out all this evidence and excluded the same from the jury, to which the defendants excepted:

*Held,* That the Court below should have admitted the evidence to go to the jury, and have given to them in charge, the law applicable thereto.

GUARDIAN AND WARD—EXECUTORS AND ADMINISTRATORS—RECEIPTS—SLAVES—NOVATION.* — *Held,* also, That if Mrs. Cherry, before she became guardian of her minor

---

*GUARDIAN, AND WARD—EXECUTORS AND ADMINISTRATORS.—Where an administrator, who was also the guardian of his intestate's children, charged himself, as guardian, with having received from himself, as administrator, a certain sum in cash, he cannot plead and prove, in defense to an action on his bond as guardian,

Cherry v. Jones

children, purchased negroes in her own right at the executors' sale of her deceased husband's property, and was indebted to the executors therefor, and after she became the guardian of her children, receipted to them for the amount due by her as so much money received from them due to her wards, and thereby canceled her own indebtedness to them for the slaves so purchased, and charged herself, as guardian, with the debt as being due by her to her wards, it was, in law, a novation, and the original contract between her and the executors, the consideration of which was slaves, was extinguished and at an end, and cannot be set up by the defendants in a suit on the guardian's bond as being a debt, the consideration of which was a slave or slaves.

Slave Debts. Relief. Before Judge Harrell. Terrell Superior Court. November Term, 1869.

In 1859, Sena J. Cherry gave her bond to the Ordinary of said county for her faithful conduct as the guardian of Susannah M., Margaret A., Elizabeth A., and Georgiana C. Powell, minors of F. C. Powell, deceased, and Peter W. Reddick, John D. Whaley and James M. Powell signed the same as her securities. In 1867 the Ordinary, for the use of Mr. Dunbar and his wife, said Margaret A. sued said principal and securities on said bond, averring that the bond was broken by Mrs. Cherry's failing to pay said Margaret's share of the property of said minors, in her hands, as guardian. The defendants jointly pleaded that Mrs. Cherry received, as the property of said minors, only three slaves, then worth $3,000 00, a note on Wilkins D. Whaley for $1,300 00, one note on said Reddick for about $1,350 00; that the slaves were emancipated, Whaley is insolvent and his note never could have been collected, and that Reddick's note was collected and its proceeds paid over to Mr. Avant, the husband of said Susan Powell, as part of her share; that when said bond was made, Reddick owned thirty slaves, worth $20,000 00, and other property, worth $10,000 00; that he lost said slaves by the result of the war, and at its close he was worth but $5,000 00; that Whaley was worth, when the bond was given, $12,000 00, and that now, neither of the defendants are worth anything over and above what will pay their debts.

581 *The plaintiff's counsel read in evidence the bond and two receipts, as follows:

"Received of L. C. Sale and E. Wither, executors of F. Cherry, five thousand six hundred and eighty-six dollars and ninety cents, as part of the amount due Sena J. Cherry, as guardian of Susan M., Margaret A., Eliza A., Sena F., and Georgia A. Powell, minors of F. C. Powell, deceased. June 2d, 1860. Sena J. Cherry, Guardian."

The other was by her, in same capacity, by which she acknowledged the receipt of $1,381 87, in full of the amount

that the amount so charged as cash was in fact made up of notes on divers persons who were solvent at the time, but had since become insolvent, and that with some of the notes he purchased slaves in his own name in order to save the debts, and that such negroes had become valueless on account of emancipation. Cranford *v.* Brewster, 57 Ga. 226; Johnson *v.* McCullough, 59 Ga. 213.

due her as such guardian .from said executors, as such, and was dated the 25th of April, 1862.

. On behalf of the defendants, Reddick then testified that Mrs. Cherry received, as guardian of said five minors, three slaves worth $3,000 00, a note on Wilkins D. Whaley for about $1,300 00 and another on him, Reddick, for about $1,350 00, and that said receipts were given for these slaves and notes; that she received nothing else except about $700 00 worth of articles, purchased by her at the sale; (we suppose of Cherry's property who seems to have been their guardian in his lifetime); that he, Reddick, paid his note in 1863 or 1864, in Confederate currency; that Wilkins Whaley's note was given for a slave, and that Wilkins D. Whaley had been insolvent ever since the war. He further testified that Mrs. Cherry bought said slaves at the sale of Frederick Cherry's estate, at about $3,000 00, and that when she, afterwards, became such guardian and signed said receipts, she and said executor included her bid for said slaves in said receipts, and that she held and treated said property as guardian. Upon motion of plaintiff's counsel, all this testimony of Reddick was ruled out. Defendants' counsel then proposed to prove by Reddick what he owned when he signed the bond, the loss of his slaves and what he was worth at the end of the war, and that Mrs. Cherry is insolvent. The Court rejected this evidence also.

Plaintiff's counsel then admitted that "the necessary expenses and board of said Margaret were worth $800 00."

The jury found for the plaintiff for $1,019 00 and costs. *Defendant's counsel sued out their writ of error, saying the Court erred in ruling out and rejecting said evidence, and "in allowing a recovery in said action, either on account of the $3,000 00, the price at which she bid off said negroes at the sale, and also on account of the $1,300 00 note on Wilkins D. Whaley, the consideration whereof is a slave.

(This cause was continued for providential cause last term.)

C. B. Wooten, for plaintiff in error. As to slave considerations, cited sec. 17, part. 1st Constitution Ga., 1868, and 39th Ga. R., 554, and the Relief Act of 1868.

Hoyt & Simmons, for defendant, did not appear.

WARNER, J.

The Court below erred in ruling out the evidence offered on the trial as specified in the .record. The evidence should have been submitted to the jury, and then the Court should have given to them in charge the law applicable thereto.

Let the judgment of the Court below be reversed.